UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

MATTHEW JAMES GIBBS,

                          Plaintiff,

        -vs-                         **No. 1:14-CV-00678 (MAT)**
                                     **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                          Defendant.

─────────────────────────────

## I.  Introduction

        Represented by counsel, Matthew James Gibbs ("plaintiff")
brings this action pursuant to Title XVI of the Social Security Act
("the Act"), seeking review of the final decision of the
Commissioner of Social Security ("the Commissioner") denying his
application for supplemental security income ("SSI"). The Court has
jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).
Presently before the Court are the parties' cross-motions for
judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure. For the reasons discussed below,
plaintiff's motion is granted, and the matter is reversed and
remanded solely for the calculation and payment of benefits.

## II. Procedural History

        The record reveals that in May 2011, plaintiff (d/o/b June 28,
1989) applied for SSI, alleging disability as of May 13, 2011.
After his application was denied, plaintiff requested a hearing,
which was held before administrative law judge Timothy M. McGuan
("the ALJ") on November 15, 2012. The ALJ issued an unfavorable

decision on November 30, 2012. The Appeals Council denied review of that decision and this timely action followed.

## III. Summary of Evidence

Medical records from Batavia Neurology ("Batavia"), which begin in May 2000 and cover the time period through May 2012, indicate that plaintiff was diagnosed with epilepsy and had a history of staring spells and seizures, with the first grand mal seizure reported when plaintiff was eighteen. EEG test results were consistent with primary generalized epilepsy. In September 2011, plaintiff's mother reported that he had suffered from four to five petit mal seizures within the last several weeks. Dr. Andrew Hilburger noted that plaintiff may be having breakthrough seizures (epileptic seizures occuring despite the use of anticonvulsants that have otherwise successfully prevented seizures in the patient). An EEG performed later that month revealed a "generalized epileptiform brain disorder." T. 305.

Medical records from General Physician Sub I, PLLC indicated diagnoses of mental retardation and convulsive epilepsy.  In March 2012, plaintiff reported having petit mal seizures daily. In April 2012, plaintiff reported to sources at Batavia that, despite compliance with medications, he had four seizures in the last several weeks, three of which were categorized as grand mal. An EEG was performed in May 2012, which revealed "an epileptiform brain disorder with a seizure focus in the left hemisphere." T. 316. In

August 2012, plaintiff's mother reported that plaintiff had suffered two seizures in the last several months. His mother described him as "acting strangely," stated that he did not appear to understand what she was saying, and reported that he was "confused for a long time afterwards." T. 348. She also reported that he had not missed any doses of medication. Dr. Hilburger diagnosed breakthrough seizures and increased his medication dosage. An October 2012 EEG once again confirmed epileptiform brain disorder. The EEG was noted to be abnormal "due to poorly organized background activity, and what appear[ed] to be bifrontal spike and sharp wave discharges." T. 352.

Dr. Harbinder Toor performed a consulting neurological examination in August 2011. Plaintiff reported having "many petit mal seizures," and two grand mal seizures in 2011. T. 263. He reported that his seizures varied in intensity and frequency. Dr. Toor also noted plaintiff's diagnoses of learning disability and Ollier's disease, the latter of which caused "a benign tumor in the right ankle, which [gave] him a dully, achy, on-and-off pain" and occasionally caused difficulty standing and walking for long periods. Id. Plaintiff's neurological examination was unremarkable. Dr. Toor opined that plaintiff should avoid heights and operating machinery because of seizures and that "sometimes" pain in his right ankle could interfere with his walking, standing, or

balancing for long periods due to Ollier's disease,[1] but that otherwise, no medical limitations were indicated by his examination. Dr. Toor recommended assessment by a psychologist or psychiatrist for "learning difficulties." T. 265.

Dr. Sandra Jensen performed an intelligence evaluation in August 2011. Dr. Jensen noted that plaintiff was 22 years old and had a history of epilepsy, a brain disorder, developmental delay, and Ollier's disease. He had previously received SSI benefits, which were terminated upon his attaining age 18. His mother reported that he had seizures and had been diagnosed with Ehler's disease. Plaintiff received a local high school diploma at age 21. He reported being unable to work "because of seizures and inability to understand job rules." T. 267. Plaintiff's reading skills tested at a third grade level, but did not indicate the presence of a reading disorder. Plaintiff tested with a full-scale IQ score of 72, "reveal[ing] that he [was] working in the extremely low range of intellectual functioning." T. 269. Dr. Jensen also found a verbal comprehension IQ standard score of 70, a perceptual reasoning IQ standard score of 90, a working memory IQ standard score of 66, and a processing speed IQ standard score of 62. She noted that "the scores are probably best interpreted individually and show that his Perceptual Reasoning score [was] in the average

---

[1] Ollier's disease is a rare nonhereditary sporadic disorder where intraosseous benign cartilaginous tumors (enchondroma) develop close to growth plate cartilage.

range, and his Processing Speed [was] in the extremely low range."

Id. Dr. Jensen opined:

> With regard to the claimant's vocational functional
> capacity, he can follow and understand simple directions
> and instructions, perform simple tasks independently,
> maintain attention and concentration, and maintain a
> regular schedule, within normal limits. His a ability to
> learn new tasks and perform complex tasks with
> supervision will be mildly to moderately impaired because
> of a low IQ. His ability to make appropriate decisions,
> relate adequately with others, and appropriately deal
> with stress should be within normal limits.

T. 269. Dr. Jensen diagnosed plaintiff with a learning disability,
borderline intellectual functioning, brain damage, seizures, and
Ollier's disease.

In September 2011, non-examining consultant Dr. C. Butensky
completed a psychiatric review technique and mental RFC.
Dr. Butensky found that plaintiff had mild restriction in
activities of daily living ("ADLs") and social functioning and
moderate difficulty in maintaining attention, concentration,
persistence, or pace. Dr. Butensky noted that his review of the
record indicated that plaintiff had borderline intellectual
functioning "with non-verbal skills superior to verbal skills."
T. 285. Dr. Butensky opined that plaintiff "retain[ed] the capacity
to perform simple job tasks; he [had] mild to moderate limitations
in his ability to sustain attention/concentration, adapt to changes
in a routine work setting and interact appropriately with coworkers
and supervisors." Id.

In a mental RFC, Dr. Butensky opined that plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday or week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.

Treating physician Dr. Hilburger submitted an RFC questionnaire, specific to seizures, dated October 2012. Dr. Hilburger noted that plaintiff had a history of generalized tonic-clonic seizures, which included loss of consciousness. He estimated that these seizures occurred approximately once per month and came on without warning. Dr. Hilburger indicated that the seizures resulted in confusion, exhaustion, and irritability, which symptoms lasted for approximately two hours following a seizure. In Dr. Hilburger's opinion, these seizures interfered "very much" with plaintiff's ADLs following a seizure. He also noted that plaintiff had a history of injury as well as fecal or urinary incontinence during a seizure. In Dr. Hilburger's opinion, plaintiff's seizures

were likely to disrupt coworkers and would require plaintiff to receive more supervision at work than an unimpaired coworker. Plaintiff could not work at heights, work with power machines, operate a motor vehicle, or take a bus alone, due to his seizure disorder. Additionally, he suffered from associated irritability, social isolation, short attention span, memory problems, and behavioral extremes. In Dr. Hilburger's opinion, plaintiff's seizures would cause him to be absent from a job more than four days per month and plaintiff was incapable of performing even "low stress" jobs due to his condition. T. 358.

## IV.  The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 27, 2011, the application date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: organic mental disorder (learning disability and borderline intellectual functioning) and epilepsy (generalized epileptiform brain disorder). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ stated, without elaborating, that he had "specifically considered the listings in 12.00 and 11.00 and [found] the criteria [were] not

met." T. 13. The ALJ also stated, again unsupported by any reasoning, that he had considered listing 12.02 and found it not met. The ALJ made no specific mention of listing 12.05. In assessing plaintiff's mental functioning, the ALJ found that plaintiff had mild limitations in ADLs, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: plaintiff must avoid all exposure to heights, dangerous machinery, and concentrated exposure to loud noise; plaintiff could not understand, remember, and carry out complex and detailed tasks; plaintiff could not operate motor vehicles; and plaintiff was limited to simple, unskilled work. After finding that plaintiff had no past relevant work, the ALJ determined that, considering plaintiff's age, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ thus found that plaintiff was not disabled.

## V.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also

Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff's primary argument is that the ALJ failed to properly consider listing 12.05(C). Plaintiff contends that the ALJ failed to provide any reasoning for finding that plaintiff was not disabled under that listing, and that substantial evidence in the record establishes that plaintiff is presumptively disabled under that listing. Because the Court finds that plaintiff suffered from mental retardation as defined by listing 12.05(c), the Court will not address plaintiff's further argument that the RFC finding was unsupported by substantial evidence.

Listing 12.05(C) was amended in August 2013 to change the phrase "mental retardation" to "intellectual disability."[2] At the time of the ALJ's decision, the listing provided that a plaintiff was mentally retarded (and therefore presumptively disabled) when he had "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05(C); see Cunningham v. Colvin, 2014 WL 6609497, *3 (W.D.N.Y. Nov. 20, 2014).

---

[2] This amendment did not change the substantive requirements of the listing.

Plaintiff argues that his verbal comprehension IQ score of 70, along with his impairment of epilepsy, combined to satisfy the criteria of listing 12.05(C). The Court agrees. The Commissioner's argument, that the verbal IQ score assessed by Dr. Jensen was an "index" rather than a "score" and therefore did not satisfy the definition of the listing, is unavailing. Dr. Jensen's report specifically delineates the verbal comprehension result as a "standard score," and plaintiff points out in his reply that the terms "score" and "index" are interchangeable under the WAIS-IV framework, which Dr. Jensen used. Therefore, the Court finds that plaintiff's verbal comprehension IQ score, as found by the state agency consultant, satisfied the first prong of listing 12.05(C).

As for the second prong, plaintiff suffered from epilepsy, a seizure disorder which, in treating physician Dr. Hilburger's opinion, limited him so severely that it would cause him to miss more than four days of work per week, required constant supervision, and precluded plaintiff from performing even low-stress jobs.

The ALJ gave Dr. Hilburger's opinion "only some weight," finding that the limitations noted were "not supported by any medical evidence in the record and were never mentioned in any examinations." T. 16. This statement by the ALJ was clear error. Plaintiff's neurological treatment records consistently note the occurrence of petit and grand mal seizures, which occurred with

increasing frequency as breakthrough seizures despite plaintiff's medication regimen. The treatment notes also document that these seizures were attended by incontinence and subsequent confusion on plaintiff's part. There is nothing in the record which substantially contradicts Dr. Hilburger's treating source opinion as to the functional limitations resulting from plaintiff's epilepsy. The Court therefore finds that the ALJ failed to provide good reasons for rejecting Dr. Hilburger's treating source opinion, which was supported by substantial evidence in the record. See, e.g., Tomasello v. Astrue, 2011 WL 2516505, *6 (W.D.N.Y. June 23, 2011) (remanding where "ALJ violated his duty to provide 'good reasons' to Plaintiff for his unfavorable decision and therefore failed to comport with the requirements of the treating physician rule"); Lynch v. Astrue, 2011 WL 2516213, *7 (W.D.N.Y. June 21, 2011) (finding that treating physicians' opinions should have been given controlling weight where they were uncontradicted by substantial evidence in the record); McCovery v. Astrue, 2009 WL 4804601, *4 (W.D.N.Y. Dec. 8, 2009) (remanding solely for calculation and payment of benefits where ALJ, among other errors, failed to properly apply the treating physician rule).

Given the controlling weight to which it was entitled, Dr. Hilburger's opinion establishes that plaintiff's epilepsy constituted a "physical or other mental impairment imposing an additional and significant work-related limitation of function," in

satisfaction of the second prong of listing 12.05(C). Therefore, plaintiff was presumptively disabled under that listing and the ALJ erred in both failing to consider the listing and failing to find plaintiff disabled. This matter is therefore reversed and remanded solely for the calculation and payment of benefits.

The Court notes that the standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, see Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, see Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). For the reasons stated above, that standard is met in this case. Additionally, the Second Circuit "has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." McClain v. Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (citations omitted). Reversal for calculation of benefits is particularly appropriate because Plaintiff's benefits claim has been pending for over four years, and additional administrative proceedings would only lead to further delay.

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 13) is denied and plaintiff's

motion (Doc. 8) is granted. This matter is reversed and remanded solely for the calculation and payment of benefits. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:      December 17, 2015
            Rochester, New York.